IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| EVERETT THOMAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-11-721-L |
| | ) | |
| THOMAS P. ADRAHTAS, in his | ) | |
| individual capacity as a police officer | ) | |
| for the City of Medicine Park; | ) | |
| ROD MCKEE, in his official capacity | ) | |
| as Chief of Police for the | ) | |
| City of Medicine Park; and | ) | |
| CITY OF MEDICINE PARK, | ) | |
| | ) | |
| Defendants. | ) | |

**O R D E R**

This civil rights action brought pursuant to 42 U.S.C. § 1983 arises from an August 13, 2009 incident in which plaintiff Everett Thomas, 73 years of age at the time, was stopped by defendant Thomas P. Adrahtas, the Assistant Chief of Police and Police Officer for the City of Medicine Park, Oklahoma ("Medicine Park"). Plaintiff was stopped for driving with no tail lights on his trailer. Plaintiff's First Cause of Action alleges that Officer Adrahtas performed an unlawful seizure and unconstitutionally used excessive force against him in connection with the August 13, 2009 incident. Plaintiff's Second Cause of Action alleges that the acts or inactions of Medicine Park Chief of Police Rod McKee as the supervising

official of the Medicine Park Police Department give rise to liability on behalf of Medicine Park because of Chief McKee's alleged failure to train and/or to supervise Officer Adrahtas. This matter is before the court on the Motion for Summary Judgment filed by defendants Officer Adrahtas and Medicine Park **[Doc. No. 42]**. Plaintiff responded to the motion and defendants filed their reply brief.

Summary judgment is appropriate when the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(a) ("[T]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). Substantive law determines which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The dispute must be genuine, that is, "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

The party opposing summary judgment may not rest upon the mere allegations or denials of the party's pleadings, but must set forth specific facts showing that there is a genuine issue for trial. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address

another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it[.]"). The mere possibility that a factual dispute may exist, without more, is not sufficient to overcome a convincing presentation by the moving party. Allegations alone will not defeat summary judgment. Cone v. Longmont United Hosp. Ass'n., 14 F.3d 526, 530 (10th Cir. 1994). Any doubt as to the existence of a genuine issue of material fact must be resolved against the party seeking summary judgment. In addition, the inferences drawn from the facts presented must be construed in the light most favorable to the nonmoving party. Board of Education v. Pico, 457 U.S. 853, 863 (1982).

In a response to a motion for summary judgment, a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial. Bryant v. O'Connor, 848 F.2d 1064, 1067 (10th Cir. 1988). The mere possibility that a factual dispute may exist, without more, is not sufficient to overcome a convincing presentation by the moving party. Allegations alone will not defeat summary judgment. Cone v. Longmont United Hosp. Ass'n., 14 F.3d 526, 530 (10th Cir. 1994).

As a preliminary matter, the court notes that in his response brief, plaintiff concedes that summary judgment is proper as to the issue of unlawful seizure in

connection with the August 13, 2009 incident.  According to plaintiff, "Upon reviewing all of the pleadings, depositions, and transcripts, Plaintiff agrees with Defendants that the judgment and sentence rendered against Plaintiff in Comanche County [Oklahoma] criminal case number CM-2009-936 for obstruction of a police officer and the associated traffic violations is sufficient for a probable cause determination as to an unlawful seizure." Doc. No. 48, p. 17.  In light of this concession, summary judgment will be granted in favor of Officer Adrahtas on plaintiff's claim of unlawful seizure, as alleged in the First Amended Complaint's First Cause of Action.  This is the only claim plaintiff has conceded. Having disposed of this claim, the court turns to a consideration of plaintiff's remaining claims – the excessive force claim against Officer Adrahtas and the municipal liability claim against Medicine Park.

    The court has carefully reviewed the briefs and exhibits submitted by the parties.  Based on this review, it appears a genuine dispute of material fact exists with respect to plaintiff's claim of excessive force against Officer Adrahtas.  As stated, any doubt as to the existence of a genuine issue of material fact must be resolved against the party seeking summary judgment.  In addition, the inferences drawn from the facts presented must be construed in the light most favorable to the nonmoving party. Board of Education v. Pico, 457 U.S. 853, 863 (1982).

In <u>Olsen v. Layton Hills Mall</u>, 312 F. 3d 1304, 1313 (10th Cir. 2002), the United States Court of Appeals for the Tenth Circuit explained the standards a court should consider when reviewing a § 1983 claim of excessive force:

> A police officer violates an arrestee's clearly established Fourth Amendment right to be free of excessive force during an arrest if the officer's arresting actions were not "'objectively reasonable' in light of the facts and circumstances confronting [him]." <u>Graham v. Connor</u>, 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); <u>Cruz v. City of Laramie</u>, 239 F.3d 1183, 1188 (10th Cir. 2001). This court assesses the reasonableness of an officer's conduct "from the perspective of a reasonable officer on the scene," acknowledging that the officer may be "forced to make split-second judgments" in certain difficult circumstances. <u>Medina v. Cram</u>, 252 F.3d 1124, 1131 (10th Cir. 2001) (quoting <u>Graham</u>, 490 U.S. at 396-397, 109 S.Ct. 1865). This reasonableness standard – which is "clearly established" for the purposes of § 1983 actions, <u>Wilson v. Meeks</u>, 52 F.3d 1547, 1552 (10th Cir. 1995) – implores the court to consider factors including the alleged crime's severity, the degree of potential threat that the suspect poses to an officer's safety and to others' safety, and the suspect's efforts to resist or evade arrest. <u>Medina</u>, 252 F.3d at 1131. Because the reasonableness inquiry overlaps with the qualified immunity analysis, "a qualified immunity defense [is] of less value when raised in defense of an excessive force claim." <u>Id.</u> (citing <u>Quezada v. County of Bernalillo</u>, 944 F.2d 710, 718 (10th Cir. 1991).

In reviewing the parties' briefs and in construing the facts and the inferences to be drawn therefrom in plaintiff's favor, as the court is obligated to do at this stage, the court finds that plaintiff's response is sufficient at this stage of the proceedings to create a triable factual dispute on the issue of excessive force. Plaintiff's version of events is markedly different from that of Officer Adrahtas in

5

several respects. The differing versions include material factual disputes concerning, for example, the degree of potential threat that plaintiff posed to the safety of Officer Adrahtas and others, as well as plaintiff's efforts to resist or to evade arrest. This case presents significant issues regarding the believability and credibility of the parties and the witnesses which must be resolved by a jury, not the court.

Because resolution of Officer Adrahtas' claim of qualified immunity would necessarily require the court to resolve the disputed factual issues by essentially adopting one version over the other, the court finds that summary judgment is not proper and cannot be granted on Officer Adrahtas' assertion of qualified immunity. The Tenth Circuit has held that summary judgment motions may not be granted on any excessive force claims under § 1983 for which *any* genuine issue of material fact remains – regardless of whether the potential grant would arise from qualified immunity or from a showing that the officer merely had not committed a constitutional violation. Olsen, 312 F. 3d at 1314 (10th Cir. 2002) (citing Allen v. Muskogee, 119 F.3d 837, 839 (10th Cir. 1997)). "Where a disputed issue of material fact remains, that ends the matter for summary judgment." Olsen, 312 F.3d at 1315. Thus, summary judgment on plaintiff's § 1983 claim against Officer Adrahtas for excessive force is inappropriate. See Fed. R. Civ. P. 56(e). *See*

*also* Mustang Fuel Corp. v. Youngstown Sheet & Tube Co., 561 F.2d 202, 204 (10th Cir. 1977).

However, the court finds that summary judgment is appropriate and will be granted on plaintiff's § 1983 claim of municipal liability against Medicine Park based on Chief McKee's failure to train and/or supervise Officer Adrahtas. Under 42 U.S.C. § 1983, a governmental entity such as Medicine Park may not be held liable simply because it employs a person who violated a plaintiff's federally protected rights. Jenkins v. Wood, 81 F.3d 988, 993 (10th Cir. 1996). In other words, the city may not be held liable on a theory of *respondeat superior*. Monell v. New York City Dep't of Social Services, 436 U.S. 658, 691 (1978). Where a single incident forms the basis for a constitutional claim, the plaintiff must show that the particular illegal course of action was taken pursuant to a decision made by a person with authority to make policy decisions on behalf of the entity being sued. Hollingsworth v. Hill, 110 F.3d 733, 743 (10th Cir. 1997) (*quoting* Jenkins, 81 F.3d at 994).

A body such as a municipality can be sued directly under § 1983 "where the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell, 436 U.S. at 690. Local governmental bodies may also be sued under § 1983 for "constitutional deprivations visited pursuant to

governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." Id., at 690-91.

> Under 42 U.S.C. § 1983, a local government may be held liable for the constitutional violation of its employees only when employee "action pursuant to official municipal policy . . . caused a constitutional tort." Monell, 436 U.S. at 691, 98 S.Ct. at 2036.  Therefore, **"to establish municipal liability a plaintiff must show (1) the existence of a municipal custom or policy and (2) a direct causal link between the custom or policy and the violation alleged."** Jenkins v. Wood, 81 F.3d 988, 993-94 (10th Cir. 1996) (*citing* City of Canton v. Harris, 489 U.S. 378, 385, 109 S.Ct. 1197, 1202, 103 L.Ed.2d 412 (1989) and Hinton v. City of Elwood, 997 F.2d 774, 782 (10th Cir. 1993)).

Hollingsworth, 110 F.3d at 742 (emphasis added).

Mindful of these authorities, the court finds that plaintiff has failed to come forward at the summary judgment stage with sufficient facts to show that Medicine Park failed in its training or supervision of Officer Adrahtas.  In addition, plaintiff's evidence fails to demonstrate that his alleged injuries were directly caused by an unconstitutional policy, practice or custom of Medicine Park.

Plaintiff has not disputed paragraphs 2, 5, 48 and 50 of defendants' Local Rule 56.1(b) Statement contained in their Brief in Support of Summary Judgment [Doc. No. 43].  These four undisputed paragraphs are set forth as follows (original paragraph numbering, citations to record omitted):

>   2. Adrahtas is well trained. In 1998, he became a CLEET[1] Certified Reserve Law Enforcement Officer, requiring the successful completion of 120 hours of instruction. Adrahtas is also a CLEET certified officer, receiving Basic certification in 2007, which required 375 hours of training plus a certification exam. Adrahtas has also received training and is certified on the proper and safe use of Taser X26. Adrahtas receives at least 25 hours of CLEET training per year, which is required to maintain CLEET certification.
>
>   5. The Medicine Park Police Department has a policy regarding Use of Force. The policies are prepared by the Chief and approved by [the] city council.
>
>   48. Plaintiff knows of no other individual that has been subjected to excessive force by a Medicine Park Police Officer. Plaintiff has not had any issues or problems with the Medicine Park Chief of Police, Rod McKee[,] or with any other officer with the Medicine Park Police Department, besides Adrahtas.
>
>   50. Plaintiff does not know anything about how the Medicine Park Police Department trains its officers.

Plaintiff has attempted to dispute defendants' undisputed facts identified in paragraphs 3, 46 and 49 of their summary judgment brief. Paragraph 3 of defendants' statement of undisputed facts provides:

>   3. It is the policy of the Medicine Park Police Department to require all officers to maintain a certain level of training and continuing education each year. Adrahtas has consistently met or exceeded the minimum requirements.

---

[1] CLEET is Oklahoma's Council on Law Enforcement Education and Training.

In seeking to discredit paragraph 3, plaintiff states that he *"disputes the facts set forth in paragraph three as evaluations of performance are also inherent in training and education each year and Chief McKee has failed to evaluate Adrahtas per municipality policy and procedure therefore a recitation of minimum class attendance is not indicative of a well trained officer."* Doc. No. 48, p. 6 (citation to record omitted).

Defendants' paragraph 46 provides:

> 46.   Prior to Adrahtas's employment with Medicine Park, he had never been the subject of any citizen complaints or disciplinary action by either of his previous law enforcement employers. Prior to August 13, 2009, Chief McKee had not received any complaints from citizens regarding excessive force by Adrahtas.

In response to paragraph 46, plaintiff states: *"Plaintiff does not dispute the facts set forth in paragraph forty-six but qualifies this statement with the knowledge that Chief McKee has admitted to not following Medicine Park Policy and Procedure on Assistant Chief evaluations as set forth in Directive # 02-59. Therefore, this statement while technically accurate should be viewed cautiously when considering any endorsement of Adrahtas by Chief McKee."* Doc. No. 48, p. 15 (citation to record omitted).

Defendants' paragraph 49 provides:

> 49.   Plaintiff has no evidence that the alleged events of August 13, 2009 were caused by a policy of the Medicine Park Police Department.

Chief McKee was not present at the stop or arrest of Plaintiff and had no involvement with him.

In response to paragraph 49, plaintiff states: *"Plaintiff disputes the facts set forth in paragraph forty-nine as the lack of supervision by Chief Rod McKee has created an atmosphere of indifference and as such a custom and policy of Chief Rod McKee ignoring civil lawsuits lawsuits [sic] filed by citizens against Adrahtas; petitions for protective orders being filed by business owners in Medicine Park for harassment by Adrahtas. Furthermore, to illustrate Chief McKee's detachment from supervising his police department, Chief McKee was unaware that Plaintiff had suffered an injury during his arrest by Adrahtas. Finally, even to the date of his deposition Chief McKee has admitted never following policy and procedure in performing supervisory evaluations of Assistant Chief Adrahtas for six (6) years."* Doc. No. 48, pp. 15-16 (citations to record omitted).

Based on plaintiff's responses to paragraphs 3, 46 and 49 set forth above, it appears that plaintiff is attempting to establish a causal connection between a lack of written supervisory evaluations by Chief McKee and the alleged unconstitutional use of excessive force by Officer Adrahtas.[2] However, plaintiff has failed to show that yearly written evaluations of Officer Adrahtas by Chief McKee, if performed, would have minimized or prevented the harm he alleges. Even assuming for the

---

[2] Defendants' reply brief states that Chief McKee testified that he performs verbal evaluations. Doc. No. 52, p. 5.

sake of argument that plaintiff could establish a policy or custom of failing to provide yearly written evaluations of Officer Adrahtas by Chief McKee, the court finds that plaintiff has failed to show a direct causal link between this failure and any injury to plaintiff caused by alleged excessive force on the part of Officer Adrahtas.  Plaintiff's statement that Chief McKee's actions evinced an atmosphere of indifference as it relates to excessive force is unsupported by any evidence. Plaintiff has admitted that he knows of no other individual who has been subjected to excessive force by a Medicine Park Police Officer.  Plaintiff has come forward with no evidence that would establish a pattern or history of the use of excessive force by Officer Adrahtas or other Medicine Park police officers.  Other than his speculation, plaintiff has not identified a causal link between a policy or custom of Medicine Park and any injury resulting from the use of excessive force.  Although plaintiff asserts that Chief McKee ignored citizen complaints concerning Officer Adrahtas, it is undisputed that there have been zero complaints or allegations, prior to the incident involving plaintiff, that Officer Adrahtas had used excessive force.

     To the extent plaintiff complains about the lack of video documentation of the August 13, 2009 incident, the court agrees with defendants that plaintiff has failed to show how this failure is sufficiently causally connected to plaintiff's injury to support his failure to train or supervise claim.  Plaintiff has not shown that video

documentation of traffic stops is required under any law or city policy or that the lack of a video caused his injury.

The court finds that the plaintiff has failed to connect his injuries or deprivation of constitutional rights with any of Medicine Park's policies or customs. See Hinton v. City of Elwood, Kan., 997 F.2d 774, 782 (10th Cir. 1993) (law requires a direct causal link between the policy or custom and the injury alleged). Plaintiff has failed to raise a genuine issue of material fact with regard to his claim against Medicine Park. Accordingly, Medicine Park is entitled to summary judgment.

In summary, for the reasons stated above, defendants' Motion for Summary Judgment **[Doc. No. 42]** is **GRANTED in part and DENIED in part** on plaintiff's § 1983 claims as follows:

- Based on plaintiff's concession discussed above, summary judgment is **granted** in favor of Thomas P. Adrahtas and against plaintiff Everett Thomas on plaintiff's claim to the extent it is based on an **unlawful seizure.**

- Summary judgment is **denied** with respect to plaintiff's claim against Officer Adrahtas alleging **excessive force.**

- Summary judgment is **denied** as to Officer Adrahtas' claim that he is entitled to **qualified immunity.**

- Summary judgment is **granted** in favor of The City of Medicine Park, Oklahoma, and against plaintiff Everett Thomas on plaintiff's claim based on **municipal liability.**

Finally, the court advises plaintiff that although summary judgment has been deemed to be inappropriate on plaintiff's excessive force claim due to the factual disputes existing in the summary judgment record, the court will carefully scrutinize plaintiff's trial evidence on this claim under the proper legal standards at the Rule 50 stage.

It is so ordered this 20th day of December, 2012.

*Tim Leonard*
TIM LEONARD
United States District Judge